# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# MONROE DIVISION

| BARBARA TABOR | * | CIVIL ACTION NO. 14-2374 |
| --- | --- | --- |
| VERSUS | * | JUDGE ROBERT G. JAMES |
| MADISON PARISH HOSPITAL SERVICE DISTRICT, ET AL. | * | MAG. JUDGE KAREN L. HAYES |

## RULING

Pending before the Court is a "Motion for Summary Judgment" [Doc. No. 114] filed by Defendant Madison Parish Hospital Service District ("MPHSD"). Plaintiff Barbara Tabor ("Tabor") opposes the motion in part.

For the following reasons, the Motion for Summary Judgment is GRANTED.

## I.  FACTS AND PROCEDURAL HISTORY

Following an investigative audit by the Louisiana Legislative Audit, MPHSD created the position of Chief Financial Officer ("CFO"). MPHSD Chief Executive Officer ("CEO") Scott Barrilleaux ("Barrilleaux") prepared a list of qualifications to be used in the advertisement for the position. Listed as "must haves" were a bachelor's degree in finance or accounting from an accredited university. Listed among "[p]referred" qualifications was a master's degree, certified public accounting, and/or Health Care Financial Management Association credentials.

On November 12, 2012, Tabor emailed her resume to Barrilleaux's assistant, Chastity Whitaker ("Whitaker") for consideration for the position of CFO. The resume detailed that she had a B.A. in business management from Eckerd College in St. Petersburg, Florida, and was "currently

attending & anticipate[d]" receiving an MBA in Healthcare Administration from the University of Phoenix. Barrilleaux interviewed Tabor and two other candidates by telephone and then the three candidates were interviewed in person by Barrilleaux and the Senior Leadership Team for MPHSD. Following the interviews, Barrilleaux hired Tabor as CFO.

Tabor and MPHSD entered into an Employment Agreement ("the Agreement") on or about January 22, 2013. [Doc. No. 114, Exh. H]. The Agreement was prepared by MPHSD's attorney, Pamela Breedlove ("Breedlove"). The Agreement provided for an initial term of two (2) years commencing on February 11, 2013, and an automatic renewal of one (1) year. However, Section 4.2 of the Agreement provided that either party could terminate the Agreement without cause upon thirty (30) days' notice. Tabor had the opportunity to read and ask questions about the Agreement before she signed it.

Tabor began her employment in February 2013. Whitaker obtained a criminal background check of Tabor after she accepted the CFO position, but Whitaker did not recall it revealing anything "negative." [Doc. No. 114, Exh. B, Whitaker Depo., p. 31]. Tabor's educational credentials were not checked.

In a signed February 18, 2013 employment application,[1] Tabor responded "no" to the question of whether she had ever been convicted of a crime. She also listed the same educational credentials on the application as those listed in her resume.[2]

---

[1]Tabor completed the application after she had been offered the CFO position.

[2]Tabor denies stating that she "earned" a B.A. in Business Management on her application, but the Court finds this denial disingenuous. [Doc. No. 128-3, ¶6]. A review of her resume [Doc. No. 114, Exh. A, p. 14] and application [Doc. No. 114, Exh. D, Tabor Depo., attachment] clearly indicate that Tabor had already obtained a B.A., when she had not. The resume states that she is "currently attending & anticipate[s]" an MBA from the University of

As CFO, Tabor report to Barrilleaux. Her duties included the preparation of financial reports for the CEO and the Board of Commissioners ("the Board"), which governs MPHSD. She attended Board meetings for the purposes of planning and providing the financial reports.

Commissioner Thomas Bartholomew ("Bartholomew"), who has a background in finance and banking had concerns about her reports.

During the last week in May or the first week in June 2013, Tabor met with Board Chairman T.J. Williams ("Williams") at his office, so he could sign MPHSD checks. He raised concerns about the amounts being paid to contractors, vendors, and legal counsel. Williams and Tabor also discussed issues with Barrilleaux's work performance. Williams sought Tabor's input and ask to her to put these concerns in a letter to be presented to the Board.

On June 6, 2013, Tabor drafted a "Letter of Concern" in which she made multiple allegations against Barrilleaux. [Doc. No. 114, Exh. K]. She presented the letter to the Board before its June 11, 2013 meeting. Tabor described the letter as presenting her own concerns and those of other employees. Williams had known of some of the concerns, but Tabor made the following new allegations:

- The Interim HIM Director Kelley Chaney helped Barrilleaux's wife, Brandy, take a coding examination;

- Brandy Barrilleaux used a MPHSD computer to study for and take her coding examination and also took possession of a coding reference book;

- Barrilleaux asked a hospital employee to watch his children while he and his wife attended a doctor's appointment in the clinic;

---

Phoenix, but there is no such qualification with regard to her B.A. Likewise, on the application under the heading "Degree or Certificate," she wrote the word "Bachelors" without any qualification. No reasonable juror would read Tabor's resume and application and conclude that she had **not** already obtained a B.A.

- Barrilleaux asked a hospital employee to pick up his wife's prescription at a pharmacy;

- Barrilleaux watched a golf tournament on a television in his office;

- Barrilleaux purchased steaks and other food items to cook at his home for a dinner with hospital consultants, and submitted the expenses after MPHSD's counsel, Breedlove, told him they were reimbursable;

- Barrilleaux told Tabor that he wanted to hire third party CPA Bobby Miller to review hospital billings for the past year; and

- Barrilleaux yelled at Tabor and told her that he had the authority to terminate her employment.

[Doc. No. 114, Exhibit D, pp. 146-149]. During the meeting, the Board voted to place Barrilleaux on administrative leave while it investigated the concerns raised. Barrilleaux responded to the allegations through his attorney.

While Barrilleaux was on administrative leave, Williams served as acting CEO.

The Board appointed attorney Joy Jackson ("Jackson") to investigate the allegations. She did so and presented her findings to the Board in an executive session during the July 15, 2013 Board meeting.

She also issued a written advisory opinion. [Doc. No. 114, Exh. L]. In that opinion, Jackson detailed the allegations against Barrilleaux and offered an opinion as to each allegation, as well as making some additional findings. She found that many of his actions were inappropriate and in violation of his contract, and she recommended a reprimand on certain issues if he returned to his position. With regard to his verbal agreement with a consultant, she noted that such agreements should be in writing and signed because Louisiana Constitutional Article 7, Section 14, prohibits state entities from "donat[ing]" money. She explained that "[w]hen the funds of the hospital are

4

committed without a written executed contract there may be the potential that public funds are being donated in direct violation of the Louisiana State Constitution. [Therefore,] the Louisiana Legislative Auditor recommends that all contracts involving public funds be placed in writing." However, Jackson did not find, specifically, that Barrilleaux or MPHSD violated state law.

In the same report, Jackson also raised concerns about Tabor. She was concerned that Tabor had deceived and manipulated Kelley Chaney ("Chaney"), the Interim HIM Director, into giving an affidavit about her interactions with Brandy Barrilleaux. She noted that Tabor had worked to undermine Barrilleaux.

After receiving her advisory opinion and hearing from Jackson in an executive session, the Board held some discussion, but then voted to reinstate Barrilleaux.[3]

Barrilleaux returned to work on July 22, 2013. On that day, Barrilleaux instructed MPHSD employee, Tracy Baur, to follow Tabor, allegedly to ensure that she did not destroy any hospital property. At one point, Tabor tried to close her office door, and Bauer blocked the door with his foot, allegedly forcing Tabor into a wall.[4] Another employee, Ben Moore ("Moore'), also followed Tabor around that day. Some time around 4:00 p.m., Tabor contacted the Tallulah Police Department to complain about Bauer and Moore. A report was taken, but no charges were filed.

This same day, July 22, 2013, Tabor left to attend an out-of-town conference.

On July 29, 2013, Louisiana Attorney General Buddy Caldwell ("Caldwell") appeared at a

---

[3]An initial motion to reinstate Barrilleaux had not been seconded. [Doc. No. 128-2]. One of the Commissioners raised concerns about a state ethics investigation into Barrilleaux's actions while employed at a hospital in Homer. After being assured by Jackson that the current vote did not address that issue, the Board then voted to reinstate Barrilleaux.

[4]Tabor has abandoned her claims for assault and battery, but the Court provides these facts for a full context of the background of the case.

5

MPHSD Board meeting and offered information about Tabor's background, including past convictions for criminal offenses and the misrepresentation of her educational credentials on her MPHSD application.[5] On that day, Barrilleaux notified Tabor's then-attorney, Jill Craft ("Craft"), via a faxed letter that Tabor was being placed on administrative leave effective immediately. In the letter he stated that Craft would be contacted about scheduling a hearing. Craft responded requesting a pre-termination hearing.

On July 31, 2013, Barrilleaux terminated Tabor, again notifying her counsel by letter that MPHSD was exercising its rights under Section 4.2 of the Agreement and that Tabor was not entitled to a hearing.

When her plane landed on her return from the conference, Tabor was notified that she was terminated. She did not return to the hospital.

Tabor was paid for an additional thirty (30) days after her receipt of the letter. When he was deposed, Barrilleaux testified that he terminated Tabor for a combination of things: "the whole undermining, the lies, the deceit, the poor job performance. . ." [Doc. No. 114, Exh. A, Barrilleaux Depo., p. 43].

---

[5]Tabor disputes this fact, asserting that the witnesses could not remember Caldwell's statements. Tabor is correct that Commissioner Calvin Washington could not remember. [Doc. No. 114, Exh. N, Washington Depo., pp. 43-45]. The minutes do not state that Caldwell discussed Tabor's educational credentials. [Doc. No. 114, Exh. N, Minutes Attached]. However, Whitaker was present at the meeting and recalled that Caldwell discussed Tabor's educational credentials. [Doc. No. 114, Exh. B, Whitaker Depo., pp. 34-35]. Barrilleax also testified that he was at the meeting when Caldwell "talked about some–I think that's when he–that might have been when he mentioned some of her background information around her education or work history or something or how many places she's lived or whatever period of time." [Doc. No. 114, Exh. A, Barrilleaux Depo., p. 41]. Although the evidence indicates that Caldwell and his office continued to investigate Tabor after her termination, Tabor offers no evidence to dispute Barrilleaux's testimony that he was aware of these issues before he terminated her. *See* [Doc. No. 114, Exh. A, Barrilleaux Depo., p. 76].

Tabor originally brought this lawsuit against MPHSD; Caldwell in his official capacity as Attorney General; Williams, Johnny Ford ("Ford"), Sandra Smith ("Smith"), and Bartholomew, the individual commissioners of the Board; and Barrilleaux in his official capacity as CEO of MPHSD.[6] Tabor asserted claims for (1) breach of contract; (2) defamation; (3) deprivation of civil rights under 42 U.S.C. § 1983; (4) intentional infliction of emotional distress; (5) assault and battery; (6) violation of the Louisiana Whistleblower Statute, LA. REV. STAT. § 23:967; and (7) attorney's fees and miscellaneous fees. Tabor also sought compensatory and special damages, comprised of back pay, benefits, reinstatement, mental anguish, pain and suffering, and lost wages.

In response to Tabor's suit, Williams, through his surviving spouse, sought dismissal of the claims against him. The Court adopted the Report and Recommendation of the Magistrate Judge and found that a deceased person lacked the capacity to be sued. On April 13, 2015, the Court dismissed Tabor's claims against this Defendant. [Doc. No. 28].

Caldwell also moved for dismissal of the claims against him asserting immunity under the Eleventh Amendment. The Court agreed with the finding of the Magistrate Judge that the Court lacked jurisdiction over Caldwell. On October 30, 2015, the Court entered Judgment [Doc. No. 66] dismissing the claims against Caldwell.

The remaining individual Defendants-- Ford, Smith, Bartholomew, and Barrilleaux-- moved for judgment on the pleadings. On February 5, 2016, the Court adopted the Report and Recommendation of the Magistrate Judge, granted the motion for judgment on the pleadings, and dismissed the claims against these Defendants as well. [Doc. No. 87].

The case has proceeded since that time with MPHSD as the sole remaining Defendant.

---

[6]Barrilleaux is no longer CEO.

Tabor's deposition was taken on April 18, 2016, and she invoked her Fifth Amendment privilege against self-incrimination in response to questions about her educational background.

On March 26, 2014, a true bill issued, charging Tabor with the crimes of (1) theft by means of fraudulent conduct, practices, or representations of $1,500 or more from MPHSD, in violation of Louisiana Revised Statute 14:67, and (2) false swearing for purpose of violating the public health or safety, in violation of 14:126.1. Trial is set on these charges for November 13, 2017.

On April 10, 2017, MPHSD filed the instant Motion for Summary Judgment on all of Tabor's claims. On May 16, 2017, Tabor filed a response [Doc. No. 128], abandoning her claims of defamation, intentional infliction of emotional distress, and assault and battery, but opposing summary judgment with regard to the breach of contract, civil rights, and whistleblower claims. On May 30, 2017, MPHSD filed a reply [Doc. No. 131]. The motion is fully briefed, and the Court is now ready to rule.

## II. LAW AND ANALYSIS

### A. Standard of Review

Under Federal Rule of Civil Procedure 56(a), "[a] party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992); *see also* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be . . . disputed must support the assertion by . . . citing to particular parts of

materials in the record . . .). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

### B. Abandoned Claims

Among others, Tabor asserted claims of defamation, intentional infliction of emotional distress, assault and battery. MPHSD moved for summary judgment on these claims. In response, Tabor states that she has "abandon[ed]" these causes of action. [Doc. No. 128, pp. 5-6]. Accordingly, the Court finds that Tabor does not oppose dismissal of the claims. MPHSD's Motion for Summary Judgment on Tabor's claims of defamation, intentional infliction of emotional distress, and assault and battery is GRANTED, and these claims will be DISMISSED WITH PREJUDICE.

### C. Breach of Contract

Tabor asserts a claim for breach of contract, contending that MPHSD breached the Agreement when it terminated her employment without cause. She seeks payment for the balance due for her contract as a result of MPHSD's alleged breach. [Doc. 1, ¶ 22].

A federal court sitting in diversity must apply the substantive law of the state. *Erie R. Co. v. Tomkins*, 304 U.S. 64 (1938). To prove a breach of contract under Louisiana law, a party must show that: (1) the obligor had an obligation to perform; (2) the obligor failed to perform; and (3) the obligee sustained injury as a result of the obligor's failure to perform. *Favrot v. Favrot*, No. 1108-09 (La. App. 4 Cir. 2011), 68 So. 3d 1099, 1109.

Interpretation of the contract will often be necessary to determine whether there has been a breach. The goal of contract interpretation is to discover the common intent of the parties. LA. CIV.

CODE art. 2045. The contract language is the starting point for determining that common intent. *Six Flags, Inc. v. Westchester Surplus Lines Ins. Co.*, 565 F.3d 948, 954 (5th Cir. 2009). "The words of a contract must be given their generally prevailing meaning." LA. CIV. CODE art. 2047. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. LA. CIV. CODE art. 2048.

"[A] contract is ambiguous when, *inter alia*, its 'written terms are susceptible to more than one interpretation,' when 'there is uncertainty as to its provisions, or when the parties' intent cannot be ascertained from the language used.'" *Greenwood 950, L.L.C. v. Chesapeake Louisiana, L.P.*, 683 F.3d 666, 668 (5th Cir. 2012); *McCarroll v. McCarroll*, 96–2700 (La.10/21/97), 701 So.2d 1280. Ambigous provisions are construed against the party who prepared the contract. LA. CIV. CODE ART. 2056.

The interpretation of a contract typically presents a question of law that may be resolved by summary judgment. *Caddo Gas Gathering L.L.C. v. Regency Intrastate LLC*, 44-851 (La. App. 2 Cir. 11/12/2009); 26 So.3d 233, 235. However, if a court determines as a matter of law that a contract is ambiguous, then discerning the parties' intent becomes, in part, a question of fact, and summary judgment will rarely be appropriate. *See Carter v. BRMAP*, 90-1153 (La. App. 1 Cir. 11/22/1991); 591 So.2d 1184, 1188.

"Because there is a presumption that employment is "at will," the party relying on an alleged contract of employment for a "fixed term" has the burden of proving that there was a meeting of the minds on the length of time of employment." *Chandler v. Kenyan*, 38,084 (La. App. 2 Cir. 12/19/03), 862 So. 2d 1182, 1184-85 (citing *Brodhead v. Board of Trustees for State Colleges and Universities*, 588 So.2d 748 (La.App. 1st Cir.1991), writ denied, 590 So.2d 597 (La.1992). "An

action for compensation due under the unexpired term of a "fixed term" employment contract by a discharged employee" sounds in contract, and, typically, this action "carries with it the right of the employee to receive all wages or salary due under the contract except in those instances in which he is discharged for cause." *Id.* at 1185 (citation omitted). However, Louisiana courts have recognized that "an employer and employee may negotiate the terms of an employment contract and agree to any terms not prohibited by law or public policy." *Amer v. Roberts*, 15-0599 (La. App. 1 Cir. 11/09/15), 184 So.3d 123, 132 (citing *Read v. Willwoods Community*, 14-1475 (La. 3/17/15), 165 So.3d 883, 886-87). Therefore, where an employment contract contains a stated fixed term, but also contains a provision which authorizes either party to terminate the agreement upon thirty days' written notice, "[t]his provision qualifie[s] the term of employment." *Amer*, 184 So.3d at 132 (citing *Shepard v. Phycor of Ruston, Inc.*, 29,181 (La. App. 2 Cir. 5/7/97), 711 So.2d 288, 292). In essence, no matter the fixed term of the contract, it is reduced to a fixed term of thirty days, since "either party could terminate without cause by providing the required notice." *Id.*

In this case, the Agreement had multiple sections addressing termination. MPHSD contends that Section 4.2 permitted it to terminate Tabor's employment upon thirty days' written notice and that it lawfully did so. Tabor contends that Section 4.2 conflicts with Sections 4.4 and 4.5. As a result, the Court should find the Agreement is ambiguous and construe it against the drafter, MPHSD. The Agreement provides as follows:

    4.2    Either party may terminate this Agreement without cause upon written thirty (30) days' notice.

    . . .

    4.4    Either party may terminate this Agreement if the other party breaches a material term of this Agreement and such breach is not cured within seven (7)

11

days of receipt of written notice of such breach by the other party. Cause is defined to include as following:

    i.    Refusal of CFO to regularly report to work and/or diligently perform the duties set forth herein;

    ii.    CFO's violation of the patient's confidentiality rights set forth in this contract and Louisiana and federal law;

    iii.    CFO's violation of the Nondisclosure of Hospital Information as set forth in this contract; or

    iv.    Hospital's failure to pay compensation as set forth herein.

4.5    Hospital may terminate this Agreement immediately upon notice to CFO upon the occurrence of any of the following, which shall form the basis for termination of this agreement:

    i.    CFO is convicted of a felony;

    ii.    CFO dies or becomes disabled and incapable of performing the services contemplated by this agreement; or

    iii.    CFO engages in an act or omission that is harmful to the safe operation of the Hospital or is a threat to the health, safety, or welfare of the patients, staff, and/or employees of the Hospital.

[Doc. No. 114, Exh. H, Sections 4.2, 4.4-4.5].

The Court finds that these provisions are clear and unambiguous. Section 4.2 allows either party to terminate the Agreement "without cause" upon thirty days' written notice. Section 4.5 allows either party to terminate for "breaches of a material term," but only after giving the other party seven days to cure the breach. Section 4.5 allows MPHSD to terminate the Agreement "immediately" if one of three conditions is met. In this case, in his letter, Barrilleaux invoked Section 4.2 of the Agreement. Although he asked that Tabor not return to the hospital, he assured her attorney (and there is no dispute) that she would be paid for thirty additional days, thus providing

the thirty days' written notice contemplated by this section. The Agreement constituted the law between the parties, and Tabor was terminated in compliance with Section 4.2.

Finally, the Court rejects Tabor's argument that she suffered a breach of contract because Barrilleaux fired her without Board approval when the Board had previously voted that it would make termination decisions. However, this is a red herring. The Agreement was indeed between Tabor and MPHSD, but the Agreement does not protect her from Barrilleaux's exercise of his lawful authority to terminate her employment. The Agreement expressly provides that MPHSD is "represented herein by Scott Barrilleaux, CEO." [Doc. No. 114, Exh. H]. Further, under Louisiana Revised Statute § 46:1057, Barrilleaux had the express "power to establish positions and to make appointment thereto . . . and transfer, promote, demote, remove and otherwise change the status of employees of the district." If the Board disagreed with Barrilleaux's actions, it could have taken recourse against him, but his exercise of authority[7] did not constitute a breach of the Agreement between MPHSD and Tabor.

Therefore, the Court finds that Tabor has not presented a genuine issue of material fact for trial as to whether MPHSD breached the Agreement. She was properly terminated under Section 4.2 of the Agreement. MPHSD's Motion for Summary Judgment on Tabor's breach of contract claim is GRANTED, and this claim is DISMISSED WITH PREJUDICE.

### D. Deprivation of Civil Rights

Tabor also brought suit under 42 U.S.C. § 1983, asserting that her rights under the Due

---

[7]Notably, before Barrilleaux terminated Tabor, Caldwell had appeared at a Board hearing and advised the Commissioners that Barrilleaux was authorized to make employment decisions. *See* [Doc. No. 114, Exh.N; *see also* La. Att'y Gen. Op. No. 94-359 (Jan. 17, 1995) (the "director [or CEO] can be considered final arbiter with regard to employee dismissal").

13

Process Clause of the Fourteenth Amendment were violated when she was terminated without a hearing.

The Due Process Clause of the Fourteenth Amendment provides in relevant part that no state "shall deprive any person of life, liberty, or property, without due process of law." U.S. CONST. AMEND XIV. To prevail on a § 1983 claim for deprivation of procedural due process, a plaintiff must first demonstrate the existence of a property interest[8] that is protected by the Due Process Clause. *Bishop v. Wood*, 426 U.S. 341, 344 (1976). Property interests are not created by the Constitution, but are created and defined by rights under state law that support claims of entitlement to those benefits. *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972); *see also Bishop*, 426 U.S. at 344; *Wallace v. Shreve Memorial Library*, 97 F.3d 746, 748 (5th Cir. 1996). Property interests "stem from independent sources such as state statutes, local ordinances, existing rules, contractual provisions or mutually explicit understandings." *Blackburn v. City of Marshall*, 42 F.3d 925, 936-37 (5th Cir. 1995) (citing *Perry v. Sindermann*, 408 U.S. 593, 599-601 (1972)); *see also Roth*, 408 U.S. at 571-72, 577. A property interest is more than "an abstract need or desire," or a "unilateral expectation," but instead is a "legitimate claim of entitlement." *Perry*, 408 U.S. at 602.

In this case, Tabor claims that she had a property interest in her continued employment and was, therefore, entitled to a due process hearing. However, as the Court determined in its ruling on her breach of contract claim, Tabor's fixed term of employment of two years was subject to the qualifying provision that either party could terminate the Agreement with thirty days' notice. Thus, Tabor had no legitimate claim of entitlement to a term of employment of two years. She was, in fact, paid for thirty days of employment after her notification. Without a property interest to protect,

---

[8]Tabor does not allege that she was deprived of a liberty interest.

Tabor's Due Process claim fails as well. Accordingly, MPHSD's Motion for Summary Judgment on this claim is also GRANTED, and the claim will be dismissed with prejudice.

### E. Whistleblower Statute

Finally, Tabor claims that MPHSD violated La. Rev. Stat. § 23:967, Louisiana's Whistleblower Statute, which provides:

> A. An employer shall not take reprisal against an employee who in good faith, and after advising the employer of the violation of law:
>
> (1) Discloses or threatens to disclose a workplace act or practice that is in violation of state law.
>
> (2) Provides information to or testifies before any public body conducting an investigation, hearing, or inquiry into any violation of law.
>
> (3) Objects to or refuses to participate in an employment act or practice that is in violation of law.

LA. REV. STAT. § 23:967(A). The statute further states that an employee aggrieved by a practice prohibited by subsection A may bring an action for damages against her employer. *See* LA. REV. STAT. § 23:967(B).

"While the Louisiana Supreme Court has not interpreted this statute, there is consensus that a plaintiff is required to prove the employer committed an actual violation of statute law, not just a good faith belief that a violation has occurred." *Brown v. ICF International*, Civil Action No. 07-931-RET, 2011 WL 5548962 at *9 (M.D. La. Nov. 15, 2011); *see also Accardo v. Louisiana Health Services & Indemnity Company*, 2005-2377 (La.App. 1 Cir. 6/21/06), 943 So.2d 381, 383, 387 (expressing concerns about "the chilling effect that this requirement will have on the reporting by an employee of illegal acts," but finding that it is "compelled to conclude that the Louisiana Whistleblower Statute, La. R.S. 23:967, requires an employee to prove an actual violation of state

15

law in order to prevail on the merits of the case."). As the Louisiana Fourth Circuit Court of Appeals explained in *Hale v. Touro Infirmary*, 04-0003 (La. App. 4 Cir. 11/3/04), 886 So.2d 1210, *writ denied*, 05-0103 (La. 3/24/05), 896 So.2d 1036, "[t]he first subsection detailing under what circumstances an employer may not take "reprisals" clearly states that the employee must be aware of **a violation of state law**. . . Although the language of the statute is inconsistent, the interpretation that is supported by the structure and that fits best into the framework of the statute is one that holds the statute to its most specific terms, i.e., violations of state law only." *Id.* at 1216 (emphasis added) (footnotes omitted);[9] *see also Beard v. Seacoast Electronics, Inc.*, No. 2006-CA-1244 (La. App. 4 Cir. 01/24/2007), 951 So.2d 1168, 1170 (Treating *Hale* as "binding precedent on this court."). Therefore, to meet her burden, a plaintiff under the Whistleblower Statute must show that "(1) the defendant violated state law; (2) she informed defendant of the violation; (3) she refused to

---

[9]In a previous ruling, this Court considered the issue of whether a plaintiff under the Whistleblower Statute must allege a violation of state, rather than federal, law. The Court observed:

> Under *Erie*, this Court must attempt to discern how the Louisiana Supreme Court would rule on this issue. The only state appellate court to address the issue has held consistently that the statute applies to violations of state law only. While the Fourth Circuit's decisions are not binding, the Court finds them to be persuasive. Though this Court certainly does not condone a violation of any law, the Whistleblower Act does not provide Chenevert with a cause of action for her alleged reports of violations of federal law, specifically Medicare regulations or the Stark Law.

*Chenevert v. CHRISTUS Continuing Care*, Civil Action No. 12-3096, [Doc. No. 51, p. 27] (W.D. La. Oct. 21, 2015). Thus, to the extent that Tabor raises allegations that could be construed as violations of federal law, those alleged violations do not support her claim under the Whistleblower Statute.

participate in the violation or threatened to disclose the practice[10]; and (4) she was fired as a result of her refusal or threat." *Brown,* 2011 WL 5548962 at *9.

Tabor cannot meet her burden. Tabor's only "whistleblower" action was to prepare and present her Letter of Concern about Barrilleaux to the Board. The Board's response to her Letter of Concern was not reprisal, but to place Barrilleaux on administrative leave and to engage outside counsel to conduct an investigation of the allegations against him. During that time, Tabor remained in her position as CFO.

When outside counsel, Jackson, concluded her investigation, she offered no legal opinion that MPHSD had violated a state law. It was her legal opinion that many of Barrilleaux's actions violated his own contract, but she did not conclude that Barrilleaux, or MPHSD, committed any state law violations. She pointed out that his failure to obtain a written agreement with a consultant "exposed" MPHSD "to potential liabilities" under Article 7, Section 14 of the Louisiana Constitution, which prohibits donation of state funds. [Doc. No. 114, Exh. L, p. 4]. She explained that "[w]hen funds of the hospital are committed without a written executed contract there may be potential that public funds are being donated," and, therefore, the Louisiana Legislative Auditor "recommends that all contracts involving public funds be placed in writing." *Id.* However, even with this conclusion, she did not find an actual violation of state law. She certainly did not find that MPHSD had authorized Barrilleaux's conduct.

While Tabor summarily concludes that her complaints about Barrilleaux implicated Article 7, Section 14 of the Louisiana Constitution and Louisiana Revised Statutes §§ 14:67,

---

[10]There is no allegation in this case that Tabor is proceeding under the public testimony prong of the Whistleblower Statute.

14:133, 14:1111-1121, 42:1163, and 42:1169, such summary allegations are not enough evidence to avoid summary judgment. Indeed, she does not even explain how these statutes were violated by Barrilleaux **or** MPHSD. *See Encalarde v. New Orleans Ctr. for Creative Arts/Riverfront*, 2014-2430 (La. 2/13/15), 158 So. 3d 826, reh'g denied, 2014-2430 (La. 3/27/15), 161 So. 3d 651 ("In order to bring an action under La. R.S. 23:967, the employee must establish the employer engaged in workplace conduct constituting an actual violation of state law."); *Richardson v. Axion Logistics, L.L.C.*, 780 F.3d 304, 306 (5th Cir. 2015) (citing *Fondren v. Greater New Orleans Expressway Comm'n*, 03-1383 (La. App. 5 Cir. 4/27/04), 871 So.2d 688, 691) ("To state a claim, Richardson first had to allege that Axion, rather than simply its employees, violated state law."). While the Court is cognizant that Barrilleaux, as CEO, may act as the hospital's agent, there is no evidence in this case that Barrilleaux committed an actual violation of state law, or that MPHSD implicitly or explicitly authorized an actual violation of state law.

Further, even if Tabor could establish that Barrilleaux's actions constituted a violation of state law attributable to Barrilleaux, she has not shown that she, thereafter, refused to participate in the violation or threatened to disclose the violative practice. Her only action was to draft and present the Letter of Concern itself. She does not present evidence that, either before or after the Jackson investigation, she threatened to tell anyone about these alleged violations or that she was asked to and refused to participate in illegal conduct.

Finally, the Court finds that she has not raised a genuine issue of material fact that she was terminated in reprisal for such a threat or refusal. Indeed, rather than reprisal, when Tabor expressed her concerns, the Board acted immediately to place Barrilleaux on administrative leave and to investigate with outside counsel. Tabor was terminated by Barrilleaux for "the whole undermining,

18

the lies, the deceit, the poor job performance"[11] only after then-Attorney General Caldwell appeared at a MPHSD Board meeting and offered information about Tabor's background, including past convictions for criminal offenses and the misrepresentation of her educational credentials on her MPHSD application. MPHSD's Motion for Summary Judgment on Tabor's whistleblower claim is also GRANTED, and this claim is DISMISSED WITH PREJUDICE.

### III. CONCLUSION

For the foregoing reasons, MPHSD's Motion for Summary Judgment [Doc. No. 114] is GRANTED, and Tabor's claims will be DISMISSED WITH PREJUDICE.

MONROE, LOUISIANA, this 13th day of June, 2017.

*/s/ Robert G. James*

ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE

---

[11] [Doc. No. 114, Exh. A, Barrilleaux Depo., p. 43].